**WO**                                                                                                          JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oscar McCoy Nester, Jr., | )  No. CV 06-1457-PHX-SMM (GEE) |
| Plaintiff, | )  **ORDER** |
| vs. | ) |
| Joseph Arpaio, et al., | ) |
| Defendants. | ) |

Plaintiff Oscar McCoy Nester, Jr., brought this civil rights action under 42 U.S.C. § 1983 against Maricopa County Sheriff Joseph Arpaio (Doc. #13).[1] Defendant filed a Motion for Summary Judgment (Doc. #67), which has been fully briefed (Doc. ##70-71, 73).

The Court will deny Defendant's motion without prejudice.

**I.     Background**

Plaintiff's claims arose during his confinement at the Maricopa County Madison Street and Fourth Avenue Jails (Doc. #13 at 1). In Count I, he alleged that Defendant acted with deliberate indifference towards his serious medical needs; specifically, his "possible walking pneumonia and stalph [sic] infection disease and suffering" (id. at 4). Plaintiff asserted that on or around December 25, 2005, he informed the sheriff's office staff and health services staff that he had difficulty breathing. He claimed that, pursuant to Defendant's policies and directives, he was denied care and made to suffer (id.). Plaintiff

---

[1] Upon screening of the First Amended Complaint, the Court dismissed the Maricopa County Sheriff's Office and Correctional Health Services as Defendants (Doc. #14).

further claimed that he filed numerous medical forms and grievances to notify Defendant of Plaintiff's difficulty breathing and need for medical treatment, but Defendant did not take Plaintiff's claims seriously, and Defendant failed to ensure timely treatment (id., attach.). Plaintiff alleged that, as a result, his lungs filled with fluid and he suffered extreme pain for 10 days before he was hospitalized for 2 weeks with severe pneumonia (id.).

In Count II, Plaintiff alleged that the living conditions at the jails were deplorable (id. at 5). He stated that there was overcrowding, the food was nutritionally inadequate, conditions were hazardous, and diseases were rampant (id.).

Plaintiff alleged that Defendant, as the sheriff, has complete responsibility for conditions and safety at the jail and implemented policies at the jail that led to Plaintiff's injuries (id. at 4-5). Plaintiff sued for compensatory and punitive damages, costs, and injunctive relief (id. at 7).

The Court ordered Defendant to respond to Counts I and II (Doc. #14), and Defendant filed his Answer (Doc. #18).

Defendant moved for summary judgment on Count I only (Doc. #67). He contended that Plaintiff failed to present evidence to support his claims in Count I. Defendant argued that the evidence reflects that Plaintiff's medical requests were responded to timely and appropriately both before and after Plaintiff's hospitalization for pneumonia (id. at 6). Defendant further argued that at most, Plaintiff can show only a difference of opinion about the care he received but, because there is no evidence that medical needs were ignored, his claim in Count I cannot survive (id.). And Defendant maintained that Plaintiff has not taken steps to conduct discovery and prosecute this action, noting that Plaintiff did not disclose any expert witnesses to support his claims nor has he deposed Defendant's expert witnesses (id. at 2-3).

Defendant submitted a Statement of Facts, which is supported by the affidavit of Zelean Tademy, a Sergeant assigned to the Maricopa County Sheriff's Inmate Hearing Unit (Doc. #68, Ex. A, Tademy Aff. ¶ 1), the affidavit of William Arthur Mosier, a physician's

1  assistant who reviewed Plaintiff's medical records (id., Ex. B, Mosier Aff. ¶¶ 1, 6), and
2  excerpts from Plaintiff's deposition (id., Ex. C, Pl. Dep., July 6, 2007).

3        The Court issued an Order informing Plaintiff of his obligation to respond to the
4  summary judgment motion (Doc. #69).[2] In his response, Plaintiff asserted that much of
5  Defendant's evidence actually supports his claim that he suffered a serious medical need and
6  that it took weeks for him to get adequate medical care. He explained that he was unable to
7  depose witnesses or adequately respond to Defendant's summary judgment motion because
8  he is indigent (id. at 2-3). Yet he asserted that he has attempted to prosecute this action to
9  the best of his ability. Plaintiff requested that the Court stay his case for one year so that he
10 may prepare his case or, in the alternative, give Plaintiff "some remedies" that would level
11 the playing field (id. at 4). Attached to his response memorandum is the copy of a letter to
12 Defendant's attorneys requesting certain discovery materials (id., attach.).

13       In reply, Defendant argued that Plaintiff's response did not address the merits of
14 Defendant's arguments nor did it present any specific facts or evidence showing a genuine
15 issue for trial (Doc. #71).

16       Plaintiff then filed a sur-response, in which he stated that he attempted to have the
17 U.S. Marshal serve subpoenas on nine witness, but that request was denied (Doc. #73). He
18 cited to Federal Rules of Civil Procedure 56(d-f) and argued that summary judgment cannot
19 be granted without any testimony from these "vital" witnesses (id. at 2-3).

20 **II.    Second Amended Complaint**

21       On September 13, 2007, before Defendant filed his summary judgment motion,
22 Plaintiff filed a Second Amended Complaint, which set forth the same medical care and
23 conditions claims but added 37 Defendants (Doc. #53). Defendant's summary judgment
24 motion does not address this amended pleading; it goes only to Plaintiff's First Amended
25 Complaint.

---

[2] Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998).

1 Under the Local Rules of Civil Procedure, a party must seek leave to amend a 2 pleading and attach a copy of the proposed amended pleading to the motion. LRCiv 15.1. 3 Plaintiff filed his Second Amended Complaint; however, he did not submit a motion 4 requesting leave to amend his pleading. As such, he has failed to comply with the local rules, 5 and his Second Amended Pleading will be stricken.

**III.  Federal Rule of Civil Procedure 56(f)**

In both of his responses, Plaintiff argues for a stay so that he may have time to adequately prosecute this action (Doc. #70, 73). He also cites to Rule 56(f) and suggests that a summary judgment ruling is inappropriate until witness depositions and affidavits can be obtained (Doc. #73 at 2).

Rule 56(f) "provides advice for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). Under this Rule, the Court may grant a continuance if the party opposing summary judgment needs additional time to discover "facts essential to justify its opposition" to the motion. Fed. R. Civ. P. 56(f). To obtain a continuance for further discovery, the opposing party must file a declaration that demonstrates (1) facts establishing a likelihood that controverting evidence may exist as to a material fact, (2) the specific reasons why such evidence could not be presented, and (3) the steps the party intends to use to obtain such evidence. See Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991).

Plaintiff has not met these requirements. But as set forth in this Order infra, the summary judgment analysis reveals that there is a genuine issue of material fact whether Defendant is liable for a constitutional violation. Thus, there is no need to stay a ruling for further discovery. Plaintiff's request for a Rule 56(f) stay will be denied.

**IV.  Motion for Summary Judgment**

  **A.  Legal Standards**

  *1.  Summary Judgment*

A court must grant summary judgment "if the pleadings, the discovery and disclosure

- 4 -

1  materials on file, and any affidavits show that there is no genuine issue as to any material fact
2  and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see
3  also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Under summary judgment
4  practice, the moving party bears the initial responsibility of presenting the basis for its motion
5  and identifying those portions of the record, together with affidavits, that it believes
6  demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323;
7  Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

8       If the moving party meets its burden with a properly supported motion, the burden
9  then shifts to the opposing party to present specific facts that show there is a genuine issue
10 for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995);
11 see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party need not
12 establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed
13 factual dispute be shown to require a jury or judge to resolve the parties' differing versions
14 of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89
15 (1968). But conclusory allegations, unsupported by factual material, are insufficient to defeat
16 a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).
17 Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate
18 specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249;
19 Devereaux, 263 F.3d at 1076.

20      In assessing whether a party has met its burden, the court views the evidence in the
21 light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052,
22 1056 (9th Cir. 1995).

23      ***2.    Pretrial Detainee***

24      Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due
25 Process Clause, which protects against the use of conduct by officials that amounts to
26 punishment. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San
27 Diego, 942 F.2d 1435, 1440 (9th Cir. 1991). For a particular governmental action to
28 constitute punishment, the action must cause the detainee to suffer some harm or disability,

1    and the purpose of the action must be to punish the detainee. Demery v. Arpaio, 378 F.3d
2    1020, 1029 (9th Cir. 2004) (citing Bell v. Wolfish, 441 U.S. 520, 538 (1979)). The harm or
3    disability caused by the government's action must either significantly exceed or be
4    independent of the inherent discomforts of confinement. Demery, 378 F.3d at 1030 (citing
5    Bell, 441 U.S. at 537). And if a condition or governmental action is not reasonably related
6    to a legitimate governmental objective—"if it is arbitrary or purposeless"—a court may infer
7    that the purpose of the governmental action is punishment." Bell, 441 U.S. at 539.

### 3.     *Medical Care*

9    Because pretrial detainees' rights under the Fourteenth Amendment are comparable
10   to prisoners' rights under the Eighth Amendment, the same standards are applied. Frost, 152
11   F.3d at 1128. To establish a § 1983 claim for violation of the Eighth Amendment based on
12   inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful
13   to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S.
14   97, 106 (1976). This requires the plaintiff to satisfy both the objective and subjective
15   components of a two-part test. Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). First,
16   he must demonstrate that he suffered a serious medical need. Jett v. Penner, 439 F.3d 1091,
17   9106 (9th Cir. 2006). Indications that a prisoner has a "serious" need for medical treatment
18   include the existence of an injury that a reasonable doctor or patient would find important
19   and worthy of comment or treatment, the presence of a medical condition that significantly
20   affects an individual's daily activities, or the existence of chronic and substantial pain.
21   McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds,
22   WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

23   Second, the plaintiff must show that the defendant's response to that serious medical
24   need was deliberately indifferent. "[D]eliberate indifference to a prisoner's serious medical
25   needs is the 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104-05. An
26   official is deliberately indifferent if he both knows of and disregards an excessive risk to an
27   inmate's health. Farmer, 511 U.S. at 837. Mere negligence or medical malpractice does not
28   establish a sufficiently culpable state of mind. Broughton v. Cutter Laboratories, 622 F.2d

1  458, 460 (9th Cir. 1980). At the same time, a prisoner does not have to prove that he was
2  completely denied medical care in order to demonstrate deliberate indifference. Lopez v.
3  Smith, 203 F.3d 1122, 1132 (9th Cir. 2000). Deliberate indifference may be shown when an
4  official denies, delays, or intentionally interferes with treatment or by the way that a medical
5  professional provides care. Jett, 439 F.3d at 1096. A difference of medical opinion,
6  however, is insufficient to establish deliberate indifference. Toguchi v. Chung, 391 F.3d
7  1051, 1058 (9th Cir. 2004). And a delay in providing medical treatment does not constitute
8  deliberate indifference unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198,
9  200 (9th Cir. 1989) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404,
10 407 (9th Cir. 1985) (per curiam)); see Hallett, 296 F.3d at 746 (the Eighth Amendment is
11 only violated if "delays occurred to a patient with problems so severe that delays would cause
12 significant harm and that Defendants should have known this to be the case "); Wood v.
13 Housewright, 900 F.2d 1332, 1333-35 (9th Cir. 1990) (holding that a delay of several days
14 in receiving pain medication for a broken shoulder did not amount to a constitutional
15 violation).

### B.     Parties' Contentions

Initially, the Court notes that Defendant's motion addresses Plaintiff's medical care at the jail both before and after his hospitalization for pneumonia (Doc. #67 at 6). Plaintiff was hospitalized from January 5 to approximately January 18, 2006 (Doc. #68, Def.'s Statement of Facts (DSOF) ¶ 10).[3] Although Plaintiff's First Amended Complaint includes the allegation that Defendant has caused Plaintiff "long term suffering and continuious [sic] medical problems over the past 11 months" (Doc. #13 at 4, attach.), his claim concerns the lack of medical care *before* his hospitalization. His supporting facts focus on the denial of care from December 25, 2005 to January 5, 2006; there are no allegations about the care or

---

[3]Defendant cites to Plaintiff's deposition testimony to support the assertion that Plaintiff was in the hospital from January 5 to January 18; however, the testimony only confirms that Plaintiff was admitted on January 5, there is nothing about the discharge date (Doc. #68, Ex. C, Pl. Dep. 66). Nonetheless, there appears to be no dispute that Plaintiff was in the hospital for approximately two weeks.

- 7 -

1  lack of care received after January 18, 2006 (id. at 4, attach.). Plaintiff's reference to
2  continued medical problems supports his alleged injury and goes only to damages.

### *1. Defendant*

Defendant argues that Plaintiff was provided medical care as needed and when requested in December 2005 and early January 2006. According to the affidavit of W. Mosier, a physician's assistant who reviewed the medical records, Plaintiff received the following care during that period: on December 2, 2005, Plaintiff was seen for an infection on his finger; he was given Augmentin and Ibuprofen (Doc. #68, Ex. B, Mosier Aff. ¶ 10). Plaintiff was seen again by nurses on December 5 and December 6 (id. ¶¶ 11-12). And Plaintiff was examined by another nurse on December 28 after complaining of chills, abdominal cramps, and a fever; his vital signs were checked and were acceptable (id. ¶ 13). On December 30, Plaintiff complained of right-sided chest pain and shortness of breath and was evaluated that same day; his vital signs were again acceptable (id. ¶¶ 15-16). Plaintiff was seen again later on December 30 when his complaints continued (id. ¶ 17). On January 1, 2006, Plaintiff complained of left-sided chest pain and was seen by a nurse, who noted that Plaintiff had a non-productive cough for one week and his respirations were even (id. ¶ 18). Then, on January 5, Plaintiff was seen by Dr. Venkatabalajai after complaints of cough, fever and shortness of breath; Dr. Venkatabalajai transferred Plaintiff to the hospital (id. ¶ 19).

Defendant maintains that Plaintiff was seen by medical personnel in response to his grievances and he even signed "informal resolutions" to his grievances, implying that his complaints were resolved (Doc. #67 at 7). Defendant further argues that because Plaintiff is not a medical professional, he is unqualified to render any medical opinion about his care and his belief about his medical condition "is insufficient to prove the need for medical care as of December 4" (id.).

### *2. Plaintiff*

Plaintiff testifies that he believed that incurring repeated staph infections ultimately led to his pneumonia and that his symptoms included high fevers, night sweats, flu symptoms, headaches, and stiffness (Doc. #68, Ex. C, Pl. Dep. 61:14-20). He states that he

1 reported these symptoms to medical personnel to the best of his ability (id. 61:21-25). 2 Plaintiff alleges on or about December 25, 2005, he specifically told officials that he had 3 difficulty breathing and believed he may have walking pneumonia (Doc. #13 at 4).[4]  As to 4 the period between December 30 and January 5, Plaintiff avers that he talked to several 5 nurses and officers and informed them that he could not breathe at certain times, yet he 6 received no care (Doc. #68, Ex. C, Pl. Dep. 66:7-12; 70:4-9).  He further alleges that he 7 "begged for help and attention.  I put in numerous medical tank orders and grievance forms 8 begging for treatment and help with no im[m]ediate response or emergency care" (Doc. #13 9 at 4, attach.).  With respect to his suffering, Plaintiff alleges that for the ten days before his 10 hospitalization, he had no sleep, he endured pain he had never experienced before, and he 11 feared death (id.).  He states that he was finally rushed to the hospital in an ambulance (id.).

12       Finally, Plaintiff insists that his grievances about medical care were not informally 13 resolved; he contends that the grievances were either not returned to him or officials did not 14 forward them to the next level in the grievance process (Doc. #70 at 2).

15       **C.**    **Analysis**

16       As to the first prong of the deliberate indifference test, Defendant makes no argument 17 that Plaintiff did not have a serious medical need.  Indeed, he identified Plaintiff's medical 18 need as pneumonia (id. at 4).  Without any argument to the contrary, and given that 19 pneumonia is a serious condition worthy of treatment that ultimately landed Plaintiff in the 20 hospital for two weeks, the Court finds that Plaintiff had a serious medical need.

21       The Court therefore turns to the second prong of the deliberate indifference test.  To 22 support his claim that he was not deliberately indifferent to Plaintiff's serious medical need, 23 Defendant relies almost entirely Mosier's affidavit.  Mosier did not treat Plaintiff and has no 24 personal knowledge of Plaintiff's treatment while at the jail.  Mosier's affidavit is based

---

[4]Because his First Amended Complaint is verified and sets forth specific facts based on personal knowledge and admissible as evidence, the Court treats it as an opposing affidavit under Rule 56 (see Doc. #13). See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

- 9 -

solely on a review of Plaintiff's medical records (Doc. #68, Ex. B, Mosier Aff. ¶ 6). But none of Plaintiff's medical records are attached to Mosier's affidavit. If papers or documents are referred to in an affidavit, "a sworn or certified copy must be attached to or served with the affidavit." Fed. R. Civ. P. 56(e). Without personal knowledge and without medical records from the time period upon which Mosier relies, his affidavit is not competent evidence in support of Defendant's summary judgment motion. See Cermetek, Inc. v. Butler Avpak, Inc., 573 F.2d 1370, 1377 (9th Cir. 1978); see also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1262 (9th Cir. 1993) ("if documentary evidence is cited as a source of a factual contention, Rule 56(e) requires attachment," even if the affidavit is also based on personal knowledge).

Regardless, Plaintiff's deposition testimony contradicts Mosier's statements about the treatment Plaintiff received from December 30 to January 5. Contrary to Mosier's claims that Plaintiff was seen and evaluated a number of times in the week before his transfer to the hospital, Plaintiff testified that during that period, he received no medical care beyond a nurse "[j]ust hear[ing] my complaint or tak[ing] my medical paperwork" and the provision of an inhaler and a few Tylenols or ibuprofen (Doc. #68, Ex. C, Pl. Dep. 70:4-71:3).

The parties also dispute whether Plaintiff's grievances, in which he requested emergency medical treatment, were resolved informally or disregarded by jail staff. Like Mosier's affidavit, Tademy's affidavit is based on a review of documents—grievance forms—but none of these forms are attached to the affidavit (Doc. #68, Ex. A, Tademy Aff. ¶ 7).[5] Even considering Tademy's affidavit, it appears to show that Plaintiff put jail staff on notice of his serious medical need in a grievance dated December 4, 2005 (id. ¶ 12). According to Tademy, in this grievance, Plaintiff complained that he had an infection on his hand and chest pain and trouble breathing, that his requests to see a sergeant had not been

---

[5]Although Tademy's affidavit refers to "Exhibit D," and describes this exhibit as copies of Plaintiff's December 3 and 4, 2005 and January 20, 2006 grievances (Doc. #68, Ex. A, Tademy Aff. ¶¶ 12-14), there is no Exhibit D attached to the affidavit or Statement of Facts.

- 10 -

met, that he filed two grievances already and his condition "is growing worse by the hour," and that anyone "would have been rushed to the hospital with such serious infections and complications!" (id.). For relief, Plaintiff asked for "[e]mergency treatment in Jesus name" (id.).

Construing the evidence in Plaintiff's favor, there are material disputes whether Plaintiff notified the staff of a serious medical need as early as December 4, whether the jail was aware of Plaintiff's continued requests for emergency medical care, and whether those requests and his deteriorating condition were disregarded. Defendant does not dispute that Plaintiff was taken to the hospital by ambulance on January 5 and hospitalized for two weeks for severe pneumonia (see Doc. #13 at 4, attach; Doc. #68, DSOF ¶ 21). The inference is that the delay in treating Plaintiff's serious medical need was harmful. Consequently, there is a genuine issue of material fact whether Plaintiff's Eighth Amendment right to medical care was violated.[6] Plaintiff's medical records, interpreted by a physician and presented to the Court in accordance with the Rules of Civil Procedure, may clarify or resolve this issue in future motions. Based on the evidence currently before the Court, Defendant's request for summary judgment on Count I will be denied.

**IT IS ORDERED:**

(1) Plaintiff's Second Amended Complaint (Doc. #53) is **stricken**.

(2) Plaintiff request for a Rule 56(f) stay (within Doc. #73) is **denied**.

(3) Defendant's Motion for Summary Judgment (Doc. #67) is **denied** without prejudice.

//
//
//

---

[6] Defendant presents no argument regarding whether this violation could have been pursuant to a policy at the jail, which Plaintiff alleges (see Doc. #13 at 4). The Court cannot address issues not presented in a motion for summary judgment. See Greene v. Solano County Jail, 513 F.3d 982, 990 (9th Cir. 2008) (stating that if a claim is not raised in a defendant's motion, summary judgment on based on that claim is inappropriate).

(4) Defendant may file a new summary judgment motion within 30 days from the date of this Order.

DATED this 7th day of August, 2008.

_____
Stephen M. McNamee
United States District Judge